Eugene I. Attebery and Aileen Mabel Attebery v. Commissioner.
Attebery v. Commissioner
Docket No. 65487.
United States Tax Court
T.C. Memo 1958-87; 1958 Tax Ct. Memo LEXIS 143; 17 T.C.M. (CCH) 426; T.C.M. (RIA) 58087; May 14, 1958
*143 Held: The amounts received by the petitioner-wife, pursuant to the separation and property settlement agreement entered into between her former husband and herself, and made part of their divorce decree, were not periodic alimony payments within the meaning of section 22(k) of the Code of 1939. Alfred D. Howell, Esq., 1701 Liberty Bank Building, Oklahoma City, Okla., for the petitioners. Harold Friedman, Esq., for the respondent. FISHER
Memorandum Opinion FISHER, Judge: This proceeding involves a deficiency in income tax determined against petitioners for the taxable year 1953 in the amount of $464.96. The issue presented involves the question of whether or not certain amounts received by the petitioner-wife from her former husband pursuant to the separation and property settlement agreement entered into by them and made a part of their divorce decree were periodic alimony payments within the meaning of section 22(k) of the Code of 1939. All of the facts are stipulated and are incorporated herein by reference. [Findings of Fact] Petitioners are individuals and are residents of the State of Oklahoma. Petitioners filed a joint income tax return *144 for the calendar year 1953 with the district director of internal revenue, Oklahoma City, Oklahoma, on March 16, 1954. Mabel Aileen Jennings and Aileen Mabel Attebery, the petitioner-wife, are one and the same person. A. L. Jennings and Aubrey L. Jennings are one and the same person. A. L. Jennings is the former husband of Aileen Mabel Attebery. On or about March 4, 1947, Mabel Aileen Jennings, as part of the first part, and A. L. Jennings, as part of the second part, entered into a Contract for Property Settlement and Alimony in pertinent part as follows: "I. "It is understood that the property and assets of the parties hereto acquired during coverature consists of the following: household furniture, now under control of the party of the first part; a Buick Sedan, 1940 model now under control of the party of the second part; personal bank accounts in the names of the respective parties; two life insurance policies, each in the amount of $10,000.00 face value on the life of the party of the second part in the Travelers Insurance Company; and one $10,000.00 life insurance policy on the life of the party of the second part with the National Service Life Insurance of the United *145 States Government. "II. "It is hereby agreed that said party of the first part shall receive as her share of the above described property and assets, household furniture, now under her control, the personal bank account, now in her name, together with all personal effects, clothing, jewelry, and gifts in her possession and in addition thereto, the lump sum of $21,000.00 in cash, as alimony; said $21,000.00 payable at the rate of $175.00 per month; the first payment to be made in June, 1947 and to continue monthly thereafter until paid or until said alimony judgment is liquidated by other provisions of this contract. "III. "It shall be the privilege of the party of the second part to make any additional payments, at any time, to reduce said judgment. "IV. "Party of the second part agrees to make party of the first part the irrevocable beneficiary of the two $10,000.00 policies of insurance in the Travelers Insurance Company as described above and assign to party of the first part all his interest, right, and title to any guaranteed values in said policies; agreeing also to keep said policies in full force and effect during the life of this contract and so long as any part *146 of said alimony judgment of $21,000.00 is unsatisfied. "V. "At the time when the surrender cash value of said insurance policies becomes equal to the then unpaid balance of the said alimony judgment, the second party shall be released of any further payments under this contract, and first party agrees to accept such cash surrender values of said insurance policies as full payment for the then unsatisfied portion of the alimony judgment of $21,000.00 as aforesaid, and said party of the first part agrees to release said judgment. "VI. "It is further agreed that the Buick automobile mentioned above; personal bank account in the name of the second party and all other property and insurance held by second party, shall be and remain the sole and separate property of the second party. "VII. "It is further agreed between the parties hereto that should any action for divorce be hereafter instituted or in case of a divorce now pending, the terms of the agreement may, upon request of either of said parties, be confirmed and incorporated as part of any judgment and decree therein rendered." On May 20, 1947, a divorce was granted in the case of Mabel Aileen Jennings v. A. L. Jennings, *147 No. 54063-D, in the District Court of Oklahoma County, Oklahoma. The divorce decree of May 20, 1947, incorporated within it the contract for property settlement and alimony executed on the fourth day of March 1947. The decree of divorce, through the incorporated property settlement, required the husband to make the wife the irrevocable beneficiary of two life insurance policies then in existence on the life of the husband, issued by The Travelers Insurance Company, on February 1, 1940, and May 1, 1942, respectively, each in the face amount of $10,000, and to assign to her all of his interest, right and title to any guaranteed values in said policies and further requiring the husband to keep the policies in full force and effect as long as any portion of the alminy judgment of $21,000 remained unsatisfied, with the further proviso that when the cash surrender of the two policies became equal to the then unpaid balance of the alimony judgment, the husband would be released from any further monthly payments on the $21,000 alimony judgment and the wife would thereupon be required to accept the cash surrender value of said policies as full payment of such balance. A. L. Jennings, on *148 April 2, 1947, in conformity with the property settlement agreement incorporated into the divorce decree, by property instruments made the petitioner the irrevocable beneficiary of the said two policies and assigned to her all of his right, title, claim, interest and benefit in the policies. During calendar year 1953, Aileen Mabel Attebery received from A. L. Jennings monthly alimony payments pursuant to the divorce decree and property settlement in a total amount of $2,100, this total being composed of 12 monthly payments each of $175. Petitioners did not include any amounts received from A. L. Jennings in their 1953 income tax return. On or about April 4, 1955, A. L. Jennings paid Aileen Mabel Attebery the full amount remaining on the amount of $21,000 mentioned in paragraph 2 of the Contract for Property Settlement and Alimony dated March 4, 1947. On or about the same date Aileen Mabel Attebery took steps to reassign the insurance policies in question to A. L. Jennings, and on April 25, 1955, the formal assignments were made. [Opinion] The significant provisions of section 22(k) of the Code of 1939 are as follows: "(k) Alimony, Etc., Income. - In the case of a wife *149 who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. * * * Installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree or instrument shall not be considered periodic payments for the purposes of this subsection; except that an installment payment shall be considered a periodic payment for the purposes of this subsection if such principal sum, by the terms of the decree or instrument, may be or is to be paid within a period ending more than 10 years from the date of such decree *150 or instrument, * * *" It is clear that, in the instant case, we are dealing with installment payments discharging a part of an obligation, the principal sum of which, in terms of money or property, was specified in the separation and settlement agreement incorporated in the decree. The only issue is whether such principal sum may have been, or was to have been paid within a period ending more than 10 years from the date of such decree or instrument. Respondent, on brief, refers generally to the policy of the law and his inferences as to the intent of the parties, but his arguments in these respects are not here significant. He further argues that the payments might have been made over a period extending more than 10 years from the date of the decree or agreement. His argument is summed up in the following statement: "It would have been possible under the agreement for the values of the policies, if any, to keep such insurance in full force until the date the last alimony payment was due and at the same time reduce the cash and loan values on said policies to a figure approaching zero." We do not accept the view that Jennings could have accomplished this without violating the *151 terms of the agreement incorporated in the decree, in which he agreed not only to keep the policies in full force and effect and make his wife the irrevocable beneficiary, but also to assign to his wife all of his interest, right and title to any guaranteed values in the policies. Any act or omission on his part, such as failure or refusal to pay premiums, would have amounted to an encroachment upon the rights assigned to the extent that it necessitated use of the cash or loan value which he unconditionally assigned to his wife. It is apparent from Exhibits 3-C-b and 4-D-b attached to the Stipulation of Facts that, assuming compliance on the part of Jennings with the agreement and decree, the cash surrender value of the insurance policies would necessarily have reached an amount equal to or greater than the balance due on the principal sum of alimony at a date well within 10 years of the dates of both the agreement and decree. At that time, the right of the wife to further payments would have ceased, and it cannot be said that such principal sum may have been or was to have been paid within a period ending more than 10 years from the date of either the agreement or decree. It is *152 clear that the statute does not recognize noncompliance with the agreement or decree as an exception to its application. Any other view would emasculate the effect of much of the provisions of the law with which we are here concerned, because the possibility of noncompliance is always present, and, if material to the issue before us, would require a holding that all principal sums payable in installments may be paid within a period ending more than 10 years from the date of the decree or instrument. In the light of the foregoing discussion, we hold that the amounts received by the petitioner-wife in 1953 pursuant to the agreement and decree above referred to were not periodic alimony payments within the meaning of section 22(k). Respondent, for the first time on reply brief, present the alternative contention that if we hold for petitioner on the basic issue (as we have) the premiums paid by the husband on the insurance policies discussed supra are periodic payments of alimony taxable to the wife. The only year before us is 1953. Respondent, in his statutory notice, made no determination that the premium, if any, paid during that year were alimony payments taxable to the wife as *153 periodic payments. He also fails to raise this issue in the answer. Assuming, arguendo, that the issue is before us, the burden of proof is clearly on respondent in the absence of any determination in relation thereto. This he has failed to sustain, since there is nothing in the record to show that any premiums were paid by the husband in 1953. Under the circumstances, we have no occasion to consider whether respondent's alternative contention has any merit in principle. Decision will be entered under Rule 50.